# IN THE SUPREME COURT OF IOWA

No. 124 / 06-1256

Filed November 17, 2006

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

　　Complainant,

vs.

**MARY MARGARET SCHUMACHER,**

　　Respondent.

_____

　　On review of the report of the Grievance Commission.


　　The Grievance Commission reports that respondent committed ethical misconduct and recommends suspension. **LICENSE SUSPENDED.**


　　Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.


　　Nathan C. Moonen of Moonen Law Office, Epworth, for respondent.

**CADY, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged Mary M. Schumacher with numerous violations of the Iowa Code of Professional Responsibility for Lawyers. The charges primarily stemmed from her neglect in three separate cases. The Grievance Commission (Commission) found Schumacher violated the Code of Professional Responsibility. It recommended she be suspended from the practice of law for a period not less than nine months. On our review, we find Schumacher violated the Code of Professional Responsibility and impose an indefinite suspension not less than six months.

## I. Background Facts and Proceedings

Mary M. Schumacher is an Iowa lawyer. She practices law in Dubuque. She was privately admonished in 1988 for handling a client matter when not competent to do so.

These proceedings arise as a result of three separate complaints filed with the Board against Schumacher. The Board, in response, filed a three-count complaint against Schumacher. The basic facts of each count were not disputed, and the matter was ultimately submitted to the Commission on a stipulation entered into by the parties. Schumacher acknowledged she violated the Code of Professional Responsibility, and agreed her conduct warranted a suspension.

The first complaint involved Schumacher's representation of a client in an action to modify a decree for dissolution of marriage. Schumacher was retained by the client in August 2001, and received a retainer of $750. However, she subsequently took little action on the case other than to obtain certified copies of some court documents and to prepare a petition. The client finally terminated the attorney-client relationship in December 2002 due to the lack of progress made in the

case, and requested a refund of the retainer. The client then filed a complaint with the Board in February 2002, and Schumacher failed to respond to three separate notices of the complaint from the Board. Schumacher did not return the retainer to the client until after the Board filed its complaint.

The second complaint also involved Schumacher's representation of a client in an action to modify a decree of dissolution of marriage. The client had experienced a loss of income after changes in his employment, and sought Schumacher's assistance in January 2003 to modify the child support provisions in his dissolution of marriage decree. Schumacher filed a modification petition in February 2003, but did little to pursue the action after that time despite frequent attempts by the client for her to do so. Schumacher repeatedly failed to return phone calls to the client and to respond to his letters. The case was set for trial in August 2003 and subsequently continued several times. The client filed a complaint with the Board in November 2003. The petition was finally heard by the court in March 2004, resulting in a decrease in the child support payments. As before, Schumacher failed to respond to three separate notices of the complaint from the Board.

The third complaint involved Schumacher's services as an attorney for an executor in an estate. Schumacher opened the estate in January 2000. However, she failed to perform numerous essential services in a timely manner, and simply failed to perform other services. Several reports to the court were both untimely and incomplete. The inheritance tax returns and estate tax returns were filed late, resulting in a substantial penalty. Schumacher eventually paid the penalty with her personal funds, totaling over $14,000. Schumacher also repeatedly failed to respond to inquiries by beneficiaries and attorneys representing

beneficiaries. A successor executor was eventually appointed to close the estate in 2005, and to correct mistakes in the fiduciary income tax returns, resulting in additional taxes and penalties. For the third time, Schumacher failed to respond to three notices from the Board concerning the complaint.

## II. Commission Proceedings

The Board charged Schumacher with numerous violations of the Code of Professional Responsibility. The violations in count I included DR 1-102(A)(1) (violation of a disciplinary rule), DR 1-102(A)(6) (conduct that adversely reflects on the practice of law), and DR 9-102(B)(4) (failure to promptly pay client funds). The violations in count II included DR 1-102(A)(1), DR 1-102(A)(5) (conduct prejudicial to the administration of justice), DR 1-102(A)(6), and DR 6-101(A)(3) (neglect of client matters). The violations in count III included DR 1-102(A)(1), (5), and (6), DR 6-101(A)(1) (handling legal matters without assistance when not competent), and DR 6-101(A)(3).

The Commission found Schumacher violated each provision of the Code. It recommended she be suspended from the practice of law for a period not less than nine months.

## III. Scope of Review

Our review of attorney disciplinary actions is de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard*, 653 N.W.2d 373, 375 (Iowa 2002). We give weight to the findings of the Commission, but are not bound by them. *Id.*

## IV. Violations

The conduct in this case involved various forms of neglect and incompetence. Schumacher failed to perform essential tasks for her clients in a timely manner. She procrastinated again and again, despite

the urgency of the task or the repeated complaints of dissatisfaction by clients or attorneys. Additionally, both her actions and inactions in the estate proceeding revealed a lack of competency to handle such matters. Schumacher violated the rules as alleged by the Board. *See Iowa Supreme Ct. Attorney Disciplinary Bd. v. Ireland,* ___ N.W.2d ___ (Iowa 2006) (attorney disciplined for failing to deliver a will to a client and for neglecting client's case in civil rights litigation).

## V. Discipline

We consider numerous factors in determining appropriate discipline, including the nature of the violation, the need for deterrence and public protection, the preservation of the legal profession's reputation, and the lawyer's fitness to continue practicing law. *Id.* at ___ (citing *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken,* 688 N.W.2d 812, 820 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel,* 634 N.W.2d 652, 655 (Iowa 2001)). Additional considerations include harm to a client, multiple incidences of neglect, and past history of discipline. *Id.* at ___ (citing *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht,* 656 N.W.2d 123, 126 (Iowa 2003); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lane,* 642 N.W.2d 296, 302 (Iowa 2002); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 819 (Iowa 2001)).

We have observed that discipline generally ranges from a public reprimand to a six-month suspension when neglect of client matters is the principal violation. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman,* 683 N.W.2d 549, 553 (Iowa 2004). While this case involves a broad range of violations, each was bound together by the common thread of neglect and procrastination. Schumacher neglected to do the work necessary to properly represent her clients, or neglected to do it in

a competent and thoughtful manner. She even failed to respond to Board inquiries, just as she failed to respond to client and attorney inquiries. Neglect permeated nearly all aspects of the cases involved in this action, and even spilled into the arena of incompetency. The nature of the conduct exhibited by Schumacher adversely reflects on her fitness to practice law, and seriously undermines public confidence in the legal profession.

While there may be underlying reasons not disclosed to us in the record to explain the misconduct that occurred in this case, we conclude the discipline imposed should fall on the high end of the general range of discipline we have imposed in the past. The neglect was pervasive and involved three separate cases. *See Pracht*, 656 N.W.2d at 126. Harm was visited on clients and third parties. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay*, 606 N.W.2d 1, 2–4 (Iowa 2000). The reputation of the legal system has suffered. Consequently, we conclude Schumacher should be indefinitely suspended from the practice of law with no possibility of reinstatement for six months. This discipline is consistent with our prior cases, and is warranted under the particular facts and circumstances.

## VI. Conclusion

We suspend Schumacher's license to practice law with no possibility of reinstatement for a period not less than six months from the date of the filing of this opinion. The suspension applies to all facets of the practice of law. Iowa Ct. R. 35.12(3) ("Any attorney suspended shall refrain, during such suspension, from all facets of the ordinary law practice . . . ."). Upon any application for reinstatement, Schumacher shall have the burden to prove she has not practiced during the period of suspension and that she meets all requirements of Iowa Court Rule

35.13.  *See* Iowa Ct. R. 35.13 (providing the procedure on application for reinstatement).  The costs of this proceeding are taxed against Schumacher, including the costs of the depositions admitted as evidence pursuant to the stipulation of the parties.

**LICENSE SUSPENDED.**

All justices concur except Ternus, C.J., who takes no part.